**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| CITY OF ATLANTA GENERAL EMPLOYEES' PENSION PLAN, CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN, and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HELEN OF TROY LIMITED, NOEL GEOFFROY, and BRIAN GRASS, <br><br> Defendants. | Case No. 26-1528 <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> JURY TRIAL DEMANDED |

Plaintiffs City of Atlanta General Employees' Pension Plan, City of Atlanta Police Officers' Pension Plan, and City of Atlanta Firefighters' Pension Plan ("Plaintiffs"), by and through their counsel, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon the investigation of their counsel, which included, among other things, review and analysis of: (i) regulatory filings made by Helen of Troy Limited ("Helen of Troy" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued and disseminated by the Company; (iii) analyst and media reports concerning Helen of Troy; and (iv) other public information regarding the Company, including statements made by Helen of Troy executives.

## INTRODUCTION

1. This securities class action is brought on behalf of purchasers of Helen of Troy common stock between April 24, 2024, and October 8, 2025, inclusive (the "Class Period"). The claims asserted herein are alleged against Helen of Troy and certain of the Company's current and former senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2. Based in El Paso, Texas, Helen of Troy markets a variety of consumer goods across several segments. Prior to the Class Period, the Company embarked on an aggressive growth-by-acquisition strategy. By October 2022, investors had become concerned over integration challenges and growing costs caused by these acquisitions, while the Company's organic revenue growth also stagnated.

3.      Coinciding with investor and analyst concern following a series of guidance reductions, in fiscal year 2023, Helen of Troy's then COO, and later CEO, Noel Geoffroy initiated Project Pegasus, a "global restructuring program that focused on both efficiency and effectiveness."[1] As a part of this initiative, the Company invested in a new distribution center in Tennessee to support its targeted growth.

4.      Throughout the Class Period, which begins shortly after Noel Geoffroy became CEO, the Company boasted about the "fuel" it was generating from Project Pegasus.  Although Helen of Troy admitted to some speed bumps in Project Pegasus, specifically citing "implementation hiccups" with its new Tennessee distribution center, Defendants assured investors that "despite the delayed savings related to our Tennessee distribution center, Project Pegasus continues to move forward.  We have made good progress on the cost of goods sold work streams, implementing multiple projects that reduce costs and simplify our supplier base."

5.      In reality, Project Pegasus was not delivering the efficiencies that Defendants touted.  Rather, unknown to investors, Helen of Troy did not have enough resources or the budget to achieve its stated restructuring or savings goals.

6.      The truth began to emerge on July 9, 2024, when Helen of Troy announced its results for the first quarter of 2025, reporting that earnings per share had declined by a staggering 49% from the prior year, and reducing full-year revenue outlook by over 20%.  The Company attributed the poor financial results to an "unusual number of internal and external challenges," delaying the long-awaited delivery of savings from the Company's strategic plan.  As a result of these disclosures, the price of Helen of Troy shares declined by $24.68 per share, or 27.7%.

---

[1] Fiscal year 2023 began on October 1, 2022, and concluded on September 30, 2023.

7.      Helen of Troy continued to assure investors that Pegasus was "on track," and that the Company had continued making "significant investments" into optimizing its productivity. Then, on May 2, 2025, the Company announced the sudden departure of its CEO, Noel Geoffroy, who spearheaded Project Pegasus and was only appointed as CEO just 14 months prior.

8.      Months later, on July 10, 2025, Helen of Troy revealed that its net sales for the first quarter of fiscal 2026 had declined 11% year-over-year and its adjusted earnings per share had shrunk by nearly 60% compared to the prior year.  The Company also disclosed a $414.4 million goodwill impairment, which it attributed to its continued decelerating revenue growth.  The Company's interim CEO—CFO Brian Grass—conceded that Helen of Troy had become "too complicated and lost focus," which "created unnecessary sprawl and [the Company] became scattered in terms of priorities."  As a result of these disclosures, the price of Helen of Troy shares declined by $7.04 per share, or 22.7%.

9.      Then, on October 9, 2025, during his first earnings call as CEO, G. Scott Uzzell reported Helen of Troy's second quarter results for fiscal year 2026, announcing that quarterly sales were down 8.9% year-over-year, adjusted earnings per share plummeted by 51%, and that these results were caused by significant business disruptions and cost headwinds which the Company expects to persist for the remainder of the year.  Uzzell acknowledged Helen of Troy's underperformance, stating that Helen of Troy "earned [its] way into a difficult period."  These disclosures caused Helen of Troy's stock price to decline by $6.90 per share, or 25%.

**JURISDICTION AND VENUE**

10.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, promulgated thereunder by the SEC, 17

C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Helen of Troy maintains its headquarters in El Paso, Texas, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

12. Plaintiff City of Atlanta General Employees' Pension Plan ("Atlanta Employees") provides benefits for current and retired employees of the City of Atlanta, and their beneficiaries, and permanent employees of the Atlanta Independent School District, except for those required to be members of the Teachers Retirement System of Georgia. As indicated in the certification submitted herewith, Atlanta Employees purchased shares of Helen of Troy common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

13. Plaintiff City of Atlanta Police Officers' Pension Plan ("Atlanta Police") provides benefits for current and retired officers in Atlanta's Department of Police Services, and their beneficiaries. As indicated in the certification submitted herewith, Atlanta Police purchased shares

of Helen of Troy common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

14.    Plaintiff City of Atlanta Firefighters' Pension Plan ("Atlanta Firefighters") provides benefits for current and retired firefighters of the City of Atlanta, and their beneficiaries.  As indicated in the certification submitted herewith, Atlanta Firefighters purchased shares of Helen of Troy common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

15.    Defendant Helen of Troy, headquartered in El Paso, Texas, markets a variety of consumer goods across outdoor, beauty, and wellness segments.  Helen of Troy common stock trades on the Nasdaq Composite ("NASDAQ") under the ticker symbol "HELE."  As of January 2, 2026, Helen of Troy had approximately 23.1 million shares of common stock outstanding, owned by hundreds or thousands of investors.

16.    Defendant Noel Geoffroy ("Geoffroy") served as Chief Executive Officer ("CEO") of Helen of Troy beginning on March 1, 2024, until her sudden departure on May 2, 2025. Geoffroy served as Chief Operating Officer ("COO") for approximately two years before the Company appointed her as CEO.

17.    Defendant Brian Grass ("Grass") served as Interim CEO of Helen of Troy from May 2, 2025, through September 1, 2025.  Before serving as Interim CEO, Grass served as longtime CFO for the Company and returned to that position after the Company hired a permanent CEO.

18.    Defendants Geoffroy and Grass are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with Helen of Troy, possessed the power and authority to control the contents of Helen of Troy's reports to the SEC, press

releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

19.     Helen of Troy markets a variety of consumer goods across outdoor, beauty, and wellness segments. Prior to the Class Period, the Company embarked on an aggressive strategy of growth by acquisition.

20.     By the beginning of the Class Period, the Company's organic revenue growth had stagnated and investors were becoming concerned over integration challenges and growing costs related to its many acquisitions. To combat this, Helen of Troy's COO, and later CEO, Noel Geoffroy initiated Project Pegasus, a reorganization designed for "operating margin expansion, reduc[ing] inventory . . . and improv[ing] cash flow" while pausing further acquisitions. The Company claimed that through Project Pegasus, it would "reset and revitalize" its brands and boasted that the "fuel" it was generating from Project Pegasus would "supercharge organic revenue growth in a way we haven't been able to before."

21.     Throughout the Class Period, the Company consistently touted the success of Project Pegasus.

6

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS**

22.     The Class Period begins on April 24, 2024, when Helen of Troy held an earnings call with analysts and investors to discuss the Company's financial results for the fourth quarter of fiscal year 2024.  During the call, which was Defendant Geoffroy's first call with analysts as the Company's CEO, Defendant Geoffroy stated, "we are generating fuel from Project Pegasus to incrementally invest in growth opportunities and capabilities" and touted that Helen of Troy is "advantageously positioned to fully leverage [its] operational and organizational scale and assets," as the team is "embracing [its] new global operating model to enable greater focus and centralized expertise."

23.     During that same call, Defendant Grass discussed the expected savings from Project Pegasus, stating "[i]n terms of Project Pegasus, we have updated our expectations to reflect the choices we are making to maximize the benefits of these initiatives while minimizing the transitional risk.  We are maintaining the total estimated savings of $75 million to $85 million over the duration of the plan but have revised the cadence of estimated savings recognition now extending into fiscal '27."

24.     On July 9, 2024, Helen of Troy held an earnings call with analysts and investors to discuss the Company's financial results for the first quarter of fiscal year 2025.  During this call, Defendant Geoffroy touted the success of Project Pegasus, stating "Project Pegasus has been instrumental in further solidifying our transformation from a holding company into a true global operating company, enabling us to work more efficiently and effectively across the organization." Although Geoffroy noted that there would be delayed savings related to the new Tennessee distribution center, she assured investors that "Project Pegasus continues to move forward.  We have made good progress on the cost of goods sold work streams, implementing multiple projects that reduce costs and simplify our supplier base."

7

25.    During the same July 9, 2024, earnings call, Defendant Grass discussed his "disappointment in our first quarter performance and the revision to our full year outlook." Despite Helen of Troy's disappointing financial results, Defendant Grass assured investors that "we still expect to expand gross margin year-over-year due to Project Pegasus" and reiterated that "[i]n terms of Project Pegasus, we are maintaining the cost savings cadence and restructuring cost estimates that we discussed in our April call and which are outlined in our earnings release."

26.    On October 9, 2024, Helen of Troy held an earnings call with analysts and investors to discuss the Company's financial results for the second quarter of fiscal year 2025. During the call, Defendant Geoffroy reflected on the success of Project Pegasus, and stated that "Project Pegasus continues to be on track and is generating critical fuel for reinvestment in our brands. This fuel, combined with our sharper brand fundamentals, is leading to stronger marketing with new creative, new, more agile media campaigns, better innovation and better execution." Defendant Geoffroy further touted that the "Project Pegasus initiatives are on track and are fueling a step-level increase in brand and innovation investment, and we have invested more in data-driven decision-making and capabilities to leverage that investment more efficiently."

27.    On the same earnings call, Defendant Grass discussed the financial state of the Company. In doing so, Defendant Grass assured investors that "we still expect to expand gross margin year-over-year due to Project Pegasus" and noted that "we substantially completed the remediation efforts related to the automation system at our Tennessee distribution facility with minimal impact to sales in the quarter. We believe that we are now in a position to achieve targeted efficiency levels by the end of fiscal '25."

28.    On January 8, 2025, Helen of Troy held an earnings call with analysts and investors to discuss the Company's financial results for the third quarter of fiscal year 2025. Defendant

8

Geoffroy quickly began touting the success of Project Pegasus, stating "We continue to anticipate we will achieve our forecasted labor efficiencies by fiscal year-end . . . Project Pegasus remains on track with lower year-over-year product and commodity costs having a positive impact on our gross profit margin and providing critical fuel for reinvestment in our brands and business."

29.    During the same earnings call, Defendant Grass echoed Defendant Geoffroy's statements, stating "With respect to Project Pegasus, as Noel mentioned, we remain on track with our savings targets and cadence and expect that restructuring charges will be largely completed in fiscal '25."

30.    On January 13, 2025, Helen of Troy presented at the 27th Annual ICR Conference 2025.  In her opening remarks, Defendant Geoffroy highlighted the importance of Project Pegasus to the Company and stated "if you look at Helen of Troy, you might hear about Project Pegasus. This was a global restructuring program that we put in place in 2022.  It was both to make us more effective and efficient, but importantly, to generate fuel to reinvest back in the brands . . . And we've been successful in doing that as well as putting in data and analytics so that when we're making that investment, we have a much better understanding with data and analytics of where the ROI is, what's working, what's not working so that we can shift accordingly."

31.    During the January 13, 2025, ICR Conference, an analyst asked Defendant Geoffroy to discuss the purpose and status of Project Pegasus.  In response, Defendant Geoffroy stated "I would say Project Pegasus was really quite all-encompassing.  It was a global restructuring program that focused on both effectiveness and efficiency . . . The project is on track.  It takes a while, especially for the cost of goods projects, not only to happen, especially if you're moving suppliers, then also to cycle through our inventory.  And so we're seeing the fruits of that labor now. We'll see some in the next year."  Defendant Grass also touched on the analyst's question, stating "we're really looking now to kind of set the next level of productivity initiatives

9

that we'll layer on top of Project Pegasus.  Doesn't mean we're doing another restructuring program, it just means it's part of our normal operating cadence.  We're going to develop productivity initiatives to layer kind of on top of what we've already started."

32.     On April 24, 2025, Helen of Troy held an earnings call with analysts and investors to discuss the Company's financial results for the fourth quarter of its fiscal year 2025.  In her opening remarks on the call regarding the Company's business performance, Defendant Geoffroy stated, "Importantly, as a result of Project Pegasus, we are now operating with a more efficient foundation, both to reduce cost of goods and a more centralized data-driven organizational structure."  Defendant Geoffroy went on to tout that "[d]uring the fiscal year, we took necessary and focused actions to reset and revitalize our brands and business.  We delivered the largest year of Project Pegasus savings."

33.     The statements set forth above in ¶¶ 22-32 were false, or at a minimum, materially misleading.  Evidence suggests that given the importance of Project Pegasus to the Company's business model and finances, the external macroeconomic conditions during the Class Period, and the Company's internal budget and resource constraints, at the time these statements were made, Defendants knew or should have known that Project Pegasus would not, and was not on track to, realize the savings, efficiency, or effectiveness that Helen of Troy consistently touted.

**THE TRUTH EMERGES**

34.     The truth began to emerge on July 9, 2024, when Helen of Troy announced its 2025 first quarter results.  The Company revealed that its earnings per share were just $0.99, reflecting a 49% decrease year-over-year.  The Company also reduced its full year revenue outlook by more than 20%, attributing these results to an "unusual number of internal and external challenges."  These disclosures caused the price of Helen of Troy shares to decline by $24.68 per share, or 27.7%.

35.    Following these disclosures, Defendants continued to mislead investors about the success of Project Pegasus, assuring investors that the project was "on track."  On May 2, 2025, however, the Company announced the sudden departure of Noel Geoffroy after only 14 months as CEO.    When discussing Geoffroy's replacement, the Company cited Helen of Troy's "underperformance in recent years" and stated that "a candidate with prior turnaround/restructuring experience would be attractive for the company."

36.    Then, on July 10, 2025, Helen of Troy revealed poor first quarter results, as the Company's net sales had declined by 11% year-over-year and its adjusted earnings per share had declined by nearly 60%.  The Company also announced a $414.4 million goodwill impairment. Helen of Troy's interim CEO, Defendant Grass, admitted that "we must get back to fundamentals, move with greater speed.  Candidly, we lost some of that along the way.  We became too matrixed, too slow, and at times disconnected from each other and the marketplace.  We made our company too complicated and lost focus on what made our businesses great.  I own that as a leader.  Now time to simplify, refocus and accelerate."  As a result of these disclosures, the price of Company shares declined by $7.04 per share, or 22.7%.

37.    On October 9, 2025, the Company announced poor results for the second quarter of fiscal 2026.  In the corresponding earnings call, Helen of Troy's new CEO, G. Scott Uzzell, informed investors that quarterly sales were down 8.9% year-over-year, adjusted earnings per share plummeted by 51%, and that these results were caused by significant business disruptions and cost headwinds which the Company expects to continue throughout the remainder of the year.  Uzzell further acknowledged Helen of Troy's underperformance, stating that Helen of Troy "earned [its] way into a difficult period" and claiming that Helen of Troy's "renewal" is underway.  On these disclosures, Helen of Troy's stock declined by $6.90 per share, or 25%.

11

**LOSS CAUSATION**

38.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Helen of Troy common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Helen of Troy common stock declined significantly as the prior artificial inflation came out over time.  As a result of their purchases of Helen of Troy common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Helen of Troy common stock during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, and directors and officers of Helen of Troy and their families and affiliates.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of January 2, 2026, Helen of Troy had approximately 23.1 million shares of common stock outstanding, owned by hundreds or thousands of investors.

41.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants misrepresented and/or omitted material facts;

12

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Helen of Troy common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damages sustained by Class members and the appropriate measure of damages.

42.     Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

43.     Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation.  Plaintiffs have no interests which conflict with those of the Class.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

45.     To the extent that any of the alleged false statements described in this complaint were forward-looking, Helen of Troy's "Safe Harbor" warnings accompanying any purportedly

13

forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

46.     To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false or misleading forward-looking statements because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Helen of Troy who knew that the statement was false or misleading.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present-tense statements when made.

**PRESUMPTION OF RELIANCE**

47.     At all relevant times, the market for Helen of Troy common stock was an efficient market for the following reasons, among others:

(a)     Helen of Troy common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Helen of Troy filed periodic public reports with the SEC and the NASDAQ;

(c)     Helen of Troy regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public

14

disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Helen of Troy was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Helen of Troy common stock promptly digested current information regarding Helen of Troy from all publicly available sources and reflected such information in the price of Helen of Troy common stock.   Under these circumstances, all purchasers of Helen of Troy common stock during the Class Period suffered similar injury through their purchase of Helen of Troy common stock at artificially inflated prices and the presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Helen of Troy's business and operations—information that was required to be disclosed—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of Project Pegasus to Helen of Troy's business strategy and financial performance, and the negative impact that the program's failure to deliver its promised savings and efficiencies could have on the Company's business, that requirement is satisfied here.

15

## SCIENTER ALLEGATIONS

50.    As alleged herein, the Defendants acted with scienter since the Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  Numerous facts including those detailed above, considered collectively, demonstrate that Defendants knew or recklessly disregarded that they were misrepresenting the success of Project Pegasus.

51.    First, given the macroeconomic and external factors during the Class Period, Defendants knew they would not be able to deliver the original Project Pegasus savings plan. Additionally, Defendants failed to focus on fundamentals when implementing Project Pegasus and knew they did not have a sufficient budget or the resources to achieve their goals.

52.    Second, given the importance of Project Pegasus to Helen of Troy's business prospects and the fact that it was being personally spearheaded by Geoffroy, it is implausible that the Company's senior executives were unaware of the significant issues.

53.    Further, another strong indicia of scienter is the fact that Geoffroy, who had spearheaded Project Pegasus, suddenly departed the Company after just 14 months as CEO and with no successor.

54.    Collectively, these facts give rise to a strong inference of scienter.

16

## CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Against All Defendants**

55.    Plaintiffs repeat, incorporate, and reallege each and every allegation contained above as if fully set forth herein.

56.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Helen of Troy common stock at artificially inflated prices.

57.    Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Helen of Troy common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

58.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, and/or of the U.S. mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

59.    During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

17

60.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Helen of Troy's true condition from the investing public and to support the artificially inflated prices of Helen of Troy common stock.

61.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Helen of Troy common stock.  Plaintiffs and the Class would not have purchased Helen of Troy common stock at the prices they paid, or at all, had they been aware that the market prices for Helen of Troy common stock had been artificially inflated by Defendants' fraudulent course of conduct.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases of Helen of Troy common stock during the Class Period.

63.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64.     Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Helen of Troy within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Helen of Troy, the Individual Defendants had the power and

18

ability to control the actions of Helen of Troy and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiffs and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.      Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action of all issues so triable.

Dated: June 2, 2026                                    Respectfully submitted,

**MARTIN & DROUGHT, P.C.**

*/s/ Gerald T. Drought*
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Weston Centre
112 E. Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591

19

Facsimile: (210) 227-7924
gdrought@mdtlaw.com
fburney@mdtlaw.com

*Liaison Counsel for Plaintiffs City of Atlanta General Employees' Pension Plan, City of Atlanta Police Officers' Pension Plan, and City of Atlanta Firefighters' Pension Plan*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Hannah Ross
Scott R. Foglietta
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiffs City of Atlanta General Employees' Pension Plan, City of Atlanta Police Officers' Pension Plan, and City of Atlanta Firefighters' Pension Plan*

20

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Garry Bridgeman, on behalf of City of Atlanta General Employees' Pension Plan ("Atlanta Employees"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of the City of Atlanta Defined Benefit Pension Plan Investment Board. I am fully authorized to enter into and execute this Certification on behalf of Atlanta Employees. I have reviewed the complaint and authorize its filing.

2. Atlanta Employees did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Atlanta Employees is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. Atlanta Employees fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act of 1995, including the selection and retention of counsel and overseeing the prosecution of the action for the class.

4. Atlanta Employees' transactions in the Helen of Troy Limited securities that are the subject of this action are set forth in the chart attached hereto.

5. Atlanta Employees has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *In re MGP Ingredients, Inc. Securities Litigation*, No. 25-cv-2153 (D. Kan.)
   *Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund v. Vestis Corporation*, No. 24-cv-2175 (N.D. Ga.)

6. Atlanta Employees will not accept any payment for serving as a representative party on behalf of the class beyond Atlanta Employees' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22.00 day of May, 2026.

Garry Bridgeman, Chairman of the City of Atlanta Defined Benefit Pension Plan Investment Board *on behalf of the City of Atlanta General Employees' Pension Plan*

**City of Atlanta General Employees' Pension Plan
Transactions in Helen of Troy Limited**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 11/20/2024 | 3,080 | 66.8968 |
| Purchase | 11/20/2024 | 3,000 | 66.8968 |
| Purchase | 11/21/2024 | 1,520 | 68.9559 |
| Purchase | 11/22/2024 | 1,621 | 72.9350 |
| Purchase | 11/22/2024 | 8,106 | 72.8793 |
| Purchase | 11/25/2024 | 4,179 | 74.3842 |
| Purchase | 2/5/2025 | 2,526 | 58.5662 |
| Purchase | 2/6/2025 | 3,751 | 59.4605 |
| Purchase | 9/10/2025 | 5,000 | 23.7788 |
| Purchase | 9/10/2025 | 7,338 | 23.7788 |
| Purchase | 9/15/2025 | 3,000 | 23.8009 |
| Purchase | 9/15/2025 | 1,875 | 23.8009 |
| Purchase | 9/16/2025 | 73 | 23.4000 |
| Purchase | 9/17/2025 | 1,510 | 22.8950 |
| Purchase | 9/24/2025 | 1,164 | 22.9161 |
| Purchase | 9/24/2025 | 2,000 | 22.9161 |
| Sale | 1/14/2025 | (2,573) | 62.2501 |
| Sale | 7/29/2025 | (2,766) | 23.0826 |

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Garry Bridgeman, on behalf of City of Atlanta Police Officers' Pension Plan ("Atlanta Police"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of the City of Atlanta Defined Benefit Pension Plan Investment Board. I am fully authorized to enter into and execute this Certification on behalf of Atlanta Police. I have reviewed the complaint and authorize its filing.

2. Atlanta Police did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Atlanta Police is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. Atlanta Police fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act of 1995, including the selection and retention of counsel and overseeing the prosecution of the action for the class.

4. Atlanta Police's transactions in the Helen of Troy Limited securities that are the subject of this action are set forth in the chart attached hereto.

5. Atlanta Police has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *In re MGP Ingredients, Inc. Securities Litigation*, No. 25-cv-2153 (D. Kan.)
   *Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund v. Vestis Corporation*, No. 24-cv-2175 (N.D. Ga.)

6. Atlanta Police will not accept any payment for serving as a representative party on behalf of the class beyond Atlanta Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22.00 day of May, 2026.

Garry Bridgeman, Chairman of the City of Atlanta
Defined Benefit Pension Plan Investment Board
*on behalf of the City of Atlanta Police Officers'*
*Pension Plan*

**City of Atlanta Police Officers' Pension Plan**
**Transactions in Helen of Troy Limited**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 7/2/2024 | 34 | 90.3060 |
| Purchase | 11/20/2024 | 1,602 | 66.8968 |
| Purchase | 11/20/2024 | 2,000 | 66.8968 |
| Purchase | 11/21/2024 | 900 | 68.9559 |
| Purchase | 11/22/2024 | 4,802 | 72.8793 |
| Purchase | 11/22/2024 | 960 | 72.9350 |
| Purchase | 11/25/2024 | 2,476 | 74.3842 |
| Purchase | 2/5/2025 | 1,705 | 58.5662 |
| Purchase | 2/6/2025 | 2,531 | 59.4605 |
| Purchase | 9/15/2025 | 3,456 | 23.8009 |
| Purchase | 9/15/2025 | 5,000 | 23.8009 |
| Purchase | 9/16/2025 | 126 | 23.4000 |
| Purchase | 9/17/2025 | 2,619 | 22.8950 |
| Purchase | 9/24/2025 | 1,489 | 22.9161 |
| Purchase | 9/24/2025 | 4,000 | 22.9161 |
| Sale | 10/24/2024 | (6) | 65.2500 |
| Sale | 10/24/2024 | (6) | 65.2500 |
| Sale | 10/24/2024 | (114) | 65.3860 |
| Sale | 10/24/2024 | (9) | 65.3149 |
| Sale | 10/24/2024 | (2) | 65.7300 |
| Sale | 10/24/2024 | (5) | 65.2650 |
| Sale | 10/24/2024 | (15) | 65.3900 |
| Sale | 10/24/2024 | (15) | 65.5900 |
| Sale | 10/24/2024 | (111) | 65.3800 |
| Sale | 10/25/2024 | (206) | 64.5643 |
| Sale | 10/28/2024 | (8) | 65.9146 |
| Sale | 10/28/2024 | (44) | 66.2553 |
| Sale | 10/28/2024 | (8) | 65.7900 |
| Sale | 10/28/2024 | (42) | 66.0091 |
| Sale | 10/28/2024 | (4) | 65.7200 |
| Sale | 10/28/2024 | (14) | 66.1363 |
| Sale | 10/28/2024 | (21) | 65.8796 |
| Sale | 10/29/2024 | (3) | 66.4700 |
| Sale | 10/29/2024 | (48) | 66.3600 |
| Sale | 10/29/2024 | (328) | 66.0082 |
| Sale | 10/29/2024 | (4) | 66.1000 |
| Sale | 10/29/2024 | (16) | 66.2156 |

**City of Atlanta Police Officers' Pension Plan**
**Transactions in Helen of Troy Limited**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 10/29/2024 | (9) | 66.4700 |
| Sale | 10/30/2024 | (285) | 64.5801 |
| Sale | 10/31/2024 | (2) | 63.8650 |
| Sale | 10/31/2024 | (11) | 64.0419 |
| Sale | 10/31/2024 | (284) | 63.7009 |
| Sale | 11/1/2024 | (3) | 64.7600 |
| Sale | 11/1/2024 | (195) | 64.6336 |
| Sale | 11/4/2024 | (226) | 66.0716 |
| Sale | 11/5/2024 | (226) | 64.8818 |

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Garry Bridgeman, on behalf of City of Atlanta Firefighters' Pension Plan ("Atlanta Firefighters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of the City of Atlanta Defined Benefit Pension Plan Investment Board. I am fully authorized to enter into and execute this Certification on behalf of Atlanta Firefighters. I have reviewed the complaint and authorize its filing.

2. Atlanta Firefighters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Atlanta Firefighters is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. Atlanta Firefighters fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act of 1995, including the selection and retention of counsel and overseeing the prosecution of the action for the class.

4. Atlanta Firefighters' transactions in the Helen of Troy Limited securities that are the subject of this action are set forth in the chart attached hereto.

5. Atlanta Firefighters has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *In re MGP Ingredients, Inc. Securities Litigation*, No. 25-cv-2153 (D. Kan.)
   *Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund v. Vestis Corporation*, No. 24-cv-2175 (N.D. Ga.)

6. Atlanta Firefighters will not accept any payment for serving as a representative party on behalf of the class beyond Atlanta Firefighters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22.00 day of May, 2026.

Garry Bridgeman, Chairman of the City of Atlanta Defined Benefit Pension Plan Investment Board
*on behalf of the City of Atlanta Firefighters' Pension Plan*

**City of Atlanta Firefighters Pension Plan**
**Transactions in Helen of Troy Limited**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 12/19/2023 | 269 | 119.5500 |
| Purchase | 11/20/2024 | 1,854 | 66.8968 |
| Purchase | 11/20/2024 | 1,000 | 66.8968 |
| Purchase | 11/21/2024 | 713 | 68.9559 |
| Purchase | 11/22/2024 | 3,805 | 72.8793 |
| Purchase | 11/22/2024 | 761 | 72.9350 |
| Purchase | 11/25/2024 | 1,961 | 74.3842 |
| Purchase | 2/5/2025 | 1,175 | 58.5662 |
| Purchase | 2/6/2025 | 1,745 | 59.4605 |
| Purchase | 9/15/2025 | 3,000 | 23.8009 |
| Purchase | 9/15/2025 | 2,086 | 23.8009 |
| Purchase | 9/16/2025 | 76 | 23.4000 |
| Purchase | 9/17/2025 | 1,575 | 22.8950 |
| Purchase | 9/24/2025 | 1,301 | 22.9161 |
| Purchase | 9/24/2025 | 2,000 | 22.9161 |
| Sale | 12/27/2023 | (269) | 122.2023 |
| Sale | 1/14/2025 | (1,286) | 62.2501 |
| Sale | 7/29/2025 | (1,491) | 23.0826 |